While it is true that the calves would be better able than the grown cattle to withstand rough handling, it is most difficult for us to conceive how so many of the grown cattle could have been so terribly and badly injured as the result of alleged rough and careless handling when only one calf was injured. The only plausible explanation why the grown cattle were so badly injured and killed is that they were not thoroughly dry at the time they were placed in the cars and the arsenic became active and caused them to become unruly and restless and to injure one another. It is our opinion that the calves did not suffer a similar fate because they were dry when placed in the cars, and consequently the arsenic, according to the testimony of all of the veterinarians, would have no effect.

We conclude, as did the trial judge, that the defendants have successfully borne the burden of exculpating themselves from fault, and that the proximate cause of the death of the cattle was arsenical poisoning. Glaser v. New Orleans, Texas & Mexico R. Co., 10 La. App. 755, 120 So. 798; Bowie Lumber Co. v. Yazoo & Mississippi Valley R. Co., 14 La. App. 454, 131 So. 689; Simms & Sons v. Railroad Co., 122 La. 271, 47 So. 602; McHenry Horse Exchange v. Illinois C. R. Co., 148 La. 49, 86 So. 649; Chalona Co. v. American Railway Express Co., 11 La. App. 18, 123 So. 147; Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Union Pacific Railroad Co. v. Burke, 255 U. S. 317, 41 S. Ct. 283, 65 L. Ed. 656; American Railway Express Co. v. Lindenburg, 260 U. S. 584, 43 S. Ct. 206, 67 L. Ed. 414; article 2754, Rev. Civ. Code.

For the reasons assigned, the judgment appealed from is affirmed.

See, also, 149 So. 897.

A. N. Simmons, of Napoleonville, for appellant.

M. T. Hewes, of New Roads, for appellee.

MOUTON, Judge.

In May, 1925, Ovide Lacour executed a mortgage with the "pact" de non alienando and confession of judgment in favor of plaintiff, the Federal Land Bank of New Orleans, for $20,000, with interest, on a large tract of land situated in Pointe Coupee parish, known as the "Taylor Plantation."

Ovide Lacour died in 1929, and this plantation was inventoried in March, 1930, with his other property consisting of lands and movable effects, the inventory amounting to a total of $28,365.00. The appraised value of the Taylor plantation was set in the inventory at the sum of $26,000, and the movable effects at $335.

The Bank of Baton Rouge, intervener, was appointed administrator of the succession of Ovide Lacour, in March, 1930, and, as it was subsequently authorized by the court, a lease of the Taylor plantation was made.

The Fairview plantation, which formed part of the succession of Ovide Lacour, and

---

**FEDERAL LAND BANK OF NEW ORLEANS v. Succession of LACOUR (BANK OF BATON ROUGE, Intervener).**

**No. 1387.**

Court of Appeal of Louisiana. First Circuit.

Dec. 4, 1934.

had been inventoried, was adjudicated to Ovide B. Lacour for $623.42, which, with accrued interest, was ordered to be paid to Lamartine Bauenchaud, sheriff of Pointe Coupee. This order was entered in January, 1934.

The Bank of Baton Rouge, through the administrator, K. H. Knox, filed a provisional account July 24, 1934, which was thereafter homologated in August, 1934, authorizing the administrator to pay the debts of the succession in accordance with the account filed by the administrator.

On this account, the administrator charges himself with the funds received from the sheriff which he had realized from the adjudication of the Fairview plantation to Ovide B. Lacour. The sum of $702.75 was charged to the administrator, which, we presume, included the accrued interest on $623.42 the sheriff had been ordered to accept from Ovide B. Lacour, adjudicatee of the Fairview plantation.

In that account, the administrator claims as his commission 2½ per cent. on the amount of the inventory of the succession of Ovide Lacour, bad debts deducted, amounting to the sum of $710.30.

This is based on the total valuation of the estate, including the $26,000, estimated value therein of the Taylor plantation upon which the deceased, Ovide Lacour, had granted a mortgage for $20,000 to plaintiff, Federal Bank of New Orleans.

As before stated, this plantation was valued in the inventory at $26,000; the commission of the administrator at 2½ per cent. on that valuation amounted to a sum exceeding $600. If the commission of the administrator is not chargeable to the $26,000, value of that plantation, his commission on the balance of the estate would be on $2,365, as the inventory, including the Taylor plantation, amounted to a total of $28,365. His commission so restricted amounts to $59.13. The provisional account shows that the other charges claimed as privileged debts amounted to $303.50, which, if added to the thus restricted commission of the administrator, $59.13, totals $362.63.

The amount received from the sale to Lacour comes up to the sum of $702.75, as carried on the account; hence, the contention of the plaintiff, Federal Bank, is that the amount so realized from the sale of the Fairview plantation is more than sufficient to pay the commission which the administrator has a right to recover, added to the other privileged debts of the estate.

After applying the $702.75 funds in the hands of the administrator to the payment of his commission of $710.30, based on the total amount of the inventory, including the Taylor plantation on which the plaintiff had its mortgage, the account says: A balance of $200.50 is still due for unpaid privileged debts, made up of the following items.

Dr. J. C. Roberts, physician........ $158.00
Madame Fazanne, nurse............  25.00
City Pharmacy....................  17.50
                                  ———————
                                  $200.50

The Bank of Baton Rouge, administrator and intervener herein, claims a privilege on the estate for $769.12, 2½ per cent. on the total sum of the inventory, amounting to $28,365, which includes, as before stated, the valuation of $26,000 on the Taylor plantation mortgaged to plaintiff, Federal Bank.

The sum of $200.50 for the items constitutes the unpaid privileged debts, before referred to; also, $194 for other small items.

The Federal Land Bank of New Orleans issued executory proceedings on its mortgage to have the Taylor plantation sold for the collection of its claim which then amounted to $17,000. In its intervention, the bank asked that the sheriff be ordered to retain in his hands, from the money realized from the sale of the Taylor plantation, a sum sufficient to pay the sum of $709.12, for the commission of the administrator, and, among other small items, the sum of $200.50, for the unpaid privileged claims, above mentioned, with the other small items amounting to $194, totaling the sum of $1,089.62. The Taylor plantation was sold for $5,250, and, as directed under the intervention, the sheriff retained, from the proceeds of that sale, the sum of $1,089.62.

This court, in a former decree, rendered judgment in this case, reversing the judgment below which had resulted in the dismissal of this intervention on an exception of no cause of action, and remanded the case for trial on the merits. 149 So. 897.

In the first judgment rendered below on the merits, the intervention was again dismissed, but, on rehearing, the court reversed itself and rendered judgment in favor of the intervener, administrator of the succession of Ovide Lacour, ordering the sheriff of Pointe Coupee to pay intervener the sum of $200.50, the unpaid privileges claimed from the proceeds of sale realized by the adjudication of the Taylor plantation sold by

plaintiff, the Federal Land Bank of New Orleans, under executory process.

In its opinion decreeing the payment of that amount from the proceeds of that sale, the court said: "The proceeds of the sale of the property foreclosed by the Federal Land Bank cannot be encroached upon for the payment of the cost of the administration of the Succession of Ovide Lacour, but must be encroached upon for the purpose of paying expenses of the last illness of the decedent to the sum of $200.50"—which was the amount of unpaid privileged claims recognized in the provisional account, hereinabove referred to.

In the Succession of Thompson, 42 La. Ann. page 124, 7 So. 477, 478, the court said: "The mortgage creditor has an interest in having the property sold separately from the other property of the succession, through the sheriff, so as to receive the proceeds, without unnecessary delay, avoid succession costs, commission of executrix, auctioneers' and attorneys' fees, etc., and the filing and homologation of an account or tableau of distribution." The same ruling is found in the case of Freedman v. Succession of Carmouche, 174 La. 808, 141 So. 843.

In the Succession of Sussman, 168 La. 349, 122 So. 62, 63, a distinction was made where the appellant had a vendor's lien, but had not asserted his rights via executiva, and had "joined the executor in his application for the sale of the property to pay the debts of the succession."

■ We agree with the district judge in his finding that the proceeds of the sale of the Taylor plantation upon which the plaintiff, the Federal Land Bank, had foreclosed, could not be "encroached upon for the payment of any of the costs of the administration of the Succession of Ovide Lacour," as this conclusion is in line with the decisions of the Supreme Court, above cited.

We cannot, however, agree with our learned brother of the district court in its holding that the Federal Land Bank must pay, out of these proceeds of sale, the sum of $200.50, decreed against it below.

The reason is that the administrator could not charge his commission, as before stated, of 2½ per cent. on the $26,000 estimated value of the Taylor plantation, amounting to a sum of over $600, and to thus absorb almost all of the $702.75, the funds which were received by the administrator from the sale of the Fairview plantation, an asset of the estate of Ovide Lacour.

■ His commission should have been based, not on $28,365, total amount of the inventory, but on $2,365, amounting to the sum of about $59. Thus reduced, his claim, with the other privileged claims carried on his tableau or claimed in the intervention, with the exception of the administrator's commission, could have been fully satisfied from the $702.75, funds in the hands of the administrator, as shown by his account. There was therefore sufficient funds of the succession to pay the privileged claims, including the $200.50, decreed against the Federal Land Bank.

The court, in its opinion, refers to the following admission made by counsel for plaintiff bank: "Counsel for the Federal Bank does not question the amounts of any of the claims itemized in the petition of intervention and third opposition, but denies any liability on the part of the Federal Land Bank for the payment of such bills. The bills no doubt are true and we do not question the amount, or whether they have been paid or not. We admit that the Estate of Ovide Lacour owes these debts but we deny the liability for the recovery of them."

This contains a denial that the Federal Bank was liable for the $200.50, and the commission charged on the value of the Taylor plantation claimed by the administrator. All the pleadings and the evidence show that this was the attitude of the Federal Land Bank. The only admission of liability was that the $200.50 claimed might be due by the succession, but not by plaintiff, the Federal Land Bank, which it did not owe, either "legally or naturally." In such cases, when payment is made, the amount may be recovered. C. C. Arts. 2302, 2303.

■ Such being the rule of law, even if counsel for plaintiff, Federal Land Bank, had admitted it owed the $200.50, it was obviously made in error, and that admission could not create an obligation and bind the bank.

The judgment must be reversed, as plaintiff bank, appellant, is not liable for the $200.50 decreed against it.

It is therefore ordered and decreed that the judgment be reversed, annulled, and avoided; that the intervention of the Baton Rouge Bank be rejected at its cost in both courts.